# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 2000 Session

## STATE OF TENNESSEE v. CHARLES B. SULLIVAN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-A-722, Walter Kurtz, Judge**

---

### No. M1999-02547-CCA-R3-CD - Filed October 13, 2000

---

Charles B. Sullivan entered guilty pleas in the Davidson County Criminal Court to three counts of aggravated rape, one count of especially aggravated burglary, three counts of aggravated burglary, and one count of rape, for which the trial court imposed an effective sentence of fifty-nine years. In this appeal as of right, the appellant contends that the individual sentences are excessive and that partial consecutive sentences are not warranted. After review, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J. and NORMA MCGEE OGLE, J., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Charles B. Sullivan.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Todd R. Kelley, Assistant Attorney General, Victor S. (Torry) Johnson III, District Attorney General, and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The appellant, Charles B. Sullivan pled guilty to three counts of aggravated rape, one count of especially aggravated burglary, three counts of aggravated burglary, and one count of rape in the Davidson County Criminal Court.[1]  Following a sentencing hearing, the trial court sentenced the appellant, as a multiple rapist, to twenty-two years for each count of aggravated rape (counts 1-3),

---

[1]In January 1998, the Davidson County Grand Jury returned an indictment charging the appellant with twenty-six counts of aggravated rape, two counts of especially aggravated burglary, two counts of aggravated burglary and one count of rape. On March 5, 1999, the court dismissed counts eight through thirty. The appellant's pleas to counts 1, 2, 3, 5,6,7, 31 and 32, were entered in June 1999. Pursuant to the plea agreement, remaining count 4 of the indictment was dismissed.

ten years for especially aggravated burglary (count 5), five years for each count of aggravated burglary (counts 6, 7, and 32), and ten years for rape (count 31). The court ordered counts 1 and 2 be served concurrently; counts 3 and 5 be served concurrently but consecutive to counts 1 and 2; counts 6 and 7 be served concurrently but consecutive to counts 3 and 5; counts 31 and 32 be served concurrently but consecutive to counts 6 and 7, for an effective sentence of fifty-nine years. The appellant contests the sentencing decision of the trial court, asserting (1) the individual sentences imposed are excessive and (2) partial consecutive sentences are not warranted in this case.

After review, we affirm the length of the individual sentences imposed by the trial court and the imposition of partial consecutive sentences.

**Background**

The proof at the sentencing hearing developed the following facts:

Janis Walden, an attorney, testified that, on May 15, 1996, she was living alone. That evening, Ms. Walden retired to her bedroom where she fell asleep watching television. At approximately 11:00 p.m., she was awakened by her television being turned off. She turned the light on and saw the appellant standing by her bed. Ms. Walden then "let out this primal scream and he ran out, and I jumped out the window to get out. . . ." Ms. Walden related that this incident was devastating to her and that it has taken a toll on her emotional well-being.

Rebecca Bossart testified that, on September 19, 1996, she was living alone. That evening, she went to bed at approximately 11:00 p.m. At 2:13 a.m., she felt her bed move. She rolled over and the appellant was crouched at the side of her bed. Ms. Bossart sat up and started screaming. The appellant then attacked her; "she hit him; he hit her; she hit him again, he hit her again." While he was striking Ms. Bossart in the face with his fist, he ordered her to stop hitting him and that he would kill her if she did not stop. At this point, Ms. Bossart withdrew. The appellant then proceeded to rape his victim and forced her to perform various sex acts upon him." Ms. Bossart explained how her ordeal ended.

> He demanded oral sex. He was on the bed. He had not removed his pants. They were down around his knees. He was on the bed and I was on the floor on my knees. And I figured this was the only time I was going to have to get out of there alive. So, I grabbed everything I could grab that belonged to that man, and I pulled as hard as I could. And I picked up a pedestal and I threw it at him. Realized my door was shut and my eyes were swollen shut from where he beat me, I got to the door, opened it, he ran past me and down the hall and out the basement door.

During the sexual assault, the appellant warned Ms. Bossart that he "knew where she lived" and he "would be back" if she ever told anybody what he had done. Ms. Bossart estimated that the entire

episode lasted between forty-five minutes to an hour. She related that this incident "has . . . affected my life in ways that I do not know how to express. I've been in counseling. I've had physical, medical problems. I've had to work through issues that I should never had to address."

Although the other victims did not personally testify at the sentencing hearing, proof was introduced as to the circumstances of the crimes committed against them.[2] Virginia Slayden, an elderly woman, reported that the appellant entered her house. The appellant approached Ms. Slayden, sat on her bed and talked to her. Ms. Slayden was able to leave the house without the appellant touching her. The offenses against Jennifer Stidham involved the appellant entering her residence and raping her. During her attack, the appellant told Ms. Stidham that he knew where she lived and if she called the police he would be back and it would be worse. Ms. Stidham states that this incident has forever changed her life.

The presentence report indicates that the thirty-seven-year-old appellant has a prior criminal history consisting of a 1989 conviction for prostitution and 1987 convictions for criminal trespass and conspiracy to commit burglary. At the time of his arrest, the appellant was using drugs on a daily basis. He explained that he started using drugs and alcohol at age 13 or 14. He claimed that he had committed the current offenses to finance his drug habit. Notwithstanding this assertion, none of the burglaries resulted in any stolen property.

The appellant, in his own defense, testified that he has been in jail for three years pending trial. He has not had any disciplinary offenses and has been involved in the Starting Point program, a drug program, and has been participating in both NA and AA. He again conceded that he had a previous problem with drugs and alcohol, cocaine being his "drug of choice." The appellant testified that he could not explain his criminal behavior. He states that he is willing to participate in a sexual treatment program. He further states that he is "very apologetic for his actions. I wish there was something I could say or do. . . . I can't turn back time. I'm sorry for what I had done."

Dr. Deborah Huntley interviewed the appellant, following his referral for psychosexual evaluation, and determined that the appellant "is in need of long term treatment for drug and alcohol abuse as well as sexual deviancy." She further opined in her report that the appellant has difficulty being accountable for his sexual deviant behavior and, despite his statements, did not appear motivated to participate in sexual deviancy treatment. She concluded that "Mr. Sullivan's history and test results indicate that, without treatment, he is at a high risk to reoffend."

The appellant's ex-wife, Candice McBride, testified that she and the appellant have been divorced for fifteen years; their marriage resulted in the birth of two children. Although she stated that "he was a good father," she conceded that "he could have done a better job."

---

[2] Testimony at the sentencing hearing indicated that the victim, Ms. Slayden has "a difficult time getting around" and her presence in court would have presented an "extreme hardship" for her. Regarding the victim, Ms. Stidham, the prosecution advised the court that she "does not feel up to testifying."

# I. Sentencing

In contesting the excessive length of the sentence imposed by the trial court, the appellant argues (1) the trial court did not properly consider the sentencing principles and relevant circumstances in applying enhancement factors and rejecting mitigating factors and (2) the trial court abused its discretion in imposing consecutive sentences in the present case.

Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). The presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The record reflects that the trial court considered the same; thus, the presumption applies. Moreover, the appellant bears the burden of showing the impropriety of the sentence imposed. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

## Length of Sentence

### A. *Enhancement Factors*

In determining the length of the appellant's sentences, the trial court applied the following enhancement factors to the corresponding convictions:

| | |
|---|---|
| Count 1: Aggravated Rape of Rebecca Bossart | (1), prior criminal history<br>(6), personal injury great |
| Count 2: Aggravated Rape of Rebecca Bossart | (1), prior criminal history<br>(6), personal injury great |
| Count 3: Aggravated Rape of Rebecca Bossart | (1), prior criminal history<br>(6), personal injury great |
| Count 5: Esp. Aggravated Burglary of Rebecca Bossart | (1), prior criminal history<br>(7), gratify desire for pleasure |
| Count 6: Aggravated Burglary of Virginia Slayden | (1), prior criminal history<br>(16), potential injury great<br>(7), gratify desire for pleasure |
| Count 7: Aggravated Burglary of Janice Walden | (1), prior criminal history<br>(16), potential injury great<br>(7), gratify desire for pleasure |
| Count 31: Rape of Jennifer Stidham | (1), prior criminal history<br>(16), potential injury great |

Count 32: Aggravated Burglary of Jennifer Stidham        (1), prior criminal history
                                                                                (16), potential injury great
                                                                                (7), gratify desire for pleasure

*Enhancement Factor (1)*:

The appellant contends that his prior history consists of misdemeanors which were not crimes of violence. Accordingly, he argues that "this does not amount to an extensive criminal history." We disagree and conclude that the trial court properly applied this enhancement factor. The fact that the crimes occurred several years ago and were misdemeanors relates to the weight that should be given to the factor, not its applicability. Moreover, the defendant candidly admitted to his abuse of illegal drugs until his recent incarceration. The unlawful use of drugs qualifies as prior criminal behavior under Tenn. Code. Ann. § 40-35-114(1). See State v. Butler, 900 S.W.2d 305, 312 (Tenn. Crim. App.1994). This allegation is without merit.

*Enhancement Factor* (6):

With regard to factor (6)'s application to counts 1, 2, and 3, the appellant contends that the proof fails to show that Ms. Bossart's personal injuries were particularly great. Specifically, the appellant refers to Ms. Bossart's testimony that the incident left no permanent physical injuries. Moreover, although the appellant concedes that Ms. Bossart noted that she would have back problems the rest of her life, no proof was introduced as to the nature of her back problems or to its seriousness. Accordingly, he argues that "[t]here is simply not any way to determine whether or not this injury could be classified as "particularly great."

Our supreme court has equated injuries that are "particularly great" with the "serious bodily injury" element, so that "proof of serious bodily injury will always constitute proof of a particularly great injury." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997). "'Serious bodily injury' means bodily injury which involves . . . a substantial risk of death; . . .protracted unconsciousness; . . .extreme physical pain . . . protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34). Absent proof of "serious bodily injury," factor (6) may be applied if the proof established that the victim sustained emotional trauma and that the psychological scarring is "particularly great." See State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996).

In the present case, the trial court made no specific findings as to application of this factor, rather, the court relied upon the State's cursory statement of the factor's applicability. The State failed to point to any facts in the record in support of this factor. On appeal, however, the State relies upon the severity of the beating received by Ms. Bossart and the resulting psychological problems. While we do not discount the severity of the beating received by Ms. Bossart, apparently, these same injuries were used to enhance the rape to aggravated rape. See Sentencing Commission Comments, Tenn. Code Ann. § 40-35-114 (enhancement factors cannot be utilized if essential elements of the offense charged). However, under the definition of "serious bodily injury" provided by our legislature, we conclude that the protracted back problems sustained by the victim constitute serious

bodily injury. Indeed, the victim testified, "I will have back problems for the rest of my life." Additionally, we do not discount the substantial emotional trauma to the victim resulting from the sexual assaults. We particularly acknowledge the fact that the victim received professional counseling following her ordeal. Accordingly, this factor was properly applied.

*Enhancement Factor (7)*

The appellant argues that the application of factor (7), that the offense was committed to gratify the defendant's desire for pleasure or excitement, was erroneous. The court explicitly rejected application of this factor to the rape convictions, rather, the court only applied this factor to the four burglary convictions. The trial court made no explicit findings regarding this factor on the record. The appellant maintains that his intent in entering the homes of these women was to commit thefts to support his drug habit. The record contradicts this assertion. Specifically, the record reveals that (1) no property was missing from the homes of the victims; (2) all victims were single women who lived alone; (3) all the victims were asleep when the appellant entered their homes; and (4) all the victims were awakened to find the appellant in their bedrooms. We conclude that the testimony introduced by the State at the sentencing hearing supports the conclusion that the appellant's motivation for these offenses was to satisfy his desire for pleasure or excitement. See Kissinger, 922 S.W.2d at 489-491. Thus, this factor was properly applied by the trial court.

*Enhancement Factor (16):*

Finally, the trial court enhanced all sentences, with the exception of those involving Ms. Bossart, on the basis that the offenses were committed under circumstances under which the potential for bodily injury to a victim was great. The trial court explicitly adopted the State's argument as to this factor, *i.e.*, "when you go into somebody's home at night . . . the risk is high. Especially in the cases where he's in the bedroom. In all of these instances women are asleep. . . ." In State v. Smith, 891 S.W.2d 922, 930-31 (Tenn. Crim. App.1994), this court held that there is a great potential for bodily injury in every aggravated burglary and absent extraordinary circumstances, this factor may not be used to enhance a defendant's sentence for aggravated burglary. Accordingly, application of this factor to counts 6, 7, and 32 was error. Moreover, with regard to the rape of Jennifer Stidham, although the behavior is reprehensible it does not appear to have subjected the victim to a risk of bodily injury greater than that ordinarily attendant in a rape. We therefore find the trial court erred in applying this enhancement factor to the above specified sentences.

*B. Mitigating Factors*

Prior to the sentencing hearing, the appellant filed notice of application of numerous non-statutory mitigating factors with the trial court, *i.e.*, great remorse for his conduct, strong support of family, model prisoner since incarcerated, accepts full responsibility for his conduct, amenability for rehabilitation, and no criminal activity from 1993 to 1996. The trial court acknowledged these non-statutory factors at the sentencing hearing but found they deserved little weight. See Tenn. Code Ann. § 40-35-113(13). The appellant concedes the trial court's consideration of these factors in his brief, but argues that the trial court also should have considered the appellant's use of drugs and alcohol since age 13 or 14; his intoxication at the time of the commission of the offenses; his

-6-

participation in drug treatment programs since incarceration; his willingness to participate in sexual offender treatment programs; his intent to pass the GED examination; his goal to learn computer-aided drafting while in prison; his church attendance while incarcerated resulting from his recent conversion to Christianity; and his involvement in the establishment of a drug treatment program for juveniles. These factors fall under the umbrella of Tenn. Code Ann. § 40-35-113(13). We conclude that the trial court did appropriately consider these factors as a singular collective factor under factor (13). Failure to give individual consideration to each of these specific allegations is not error.

*C. Weighing of Enhancement and Mitigating Factors*

When there are enhancement factors and mitigating factors, the trial court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). If the offense is a class A felony, the court must start at the midpoint in the range. See Tenn. Code Ann. § 40-35-210(c).

**Counts 1, 2, and 3: Aggravated Rape of Rebecca Bossart**: For a range I standard offender convicted of aggravated rape, a class A felony, the sentencing range is fifteen to twenty-five years.[3] See Tenn. Code Ann. § 40-35-112(a)(1) (1997); Tenn. Code Ann. § 39-13-502(b). The starting point for sentencing purposes is twenty years, which is the midpoint in the range. Tenn. Code Ann. § 40-35-210(c). The trial court imposed a twenty-two year sentence. Upon *de novo* review, this court applies two enhancement factors, (1), prior criminal history, and (6) injuries particularly great, and one non-statutory mitigator. The mere number of enhancement and mitigating factors is not relevant, rather "the important consideration [is] the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct." State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App.1995) (citing State v. Moss, 727 S.W.2d 229, 238 (Tenn.1986)). We conclude that twenty-two years is appropriate for each conviction of aggravated rape.

**Count 5: Especially Aggravated Burglary of Rebecca Bossart.** Especially aggravated burglary is a class B felony. See Tenn. Code Ann. § 39-14-404(c). Accordingly, the sentencing range for a range I offender is "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2). Again, the trial court imposed a sentence of ten years for this conviction. Upon *de novo* review, we have found two enhancement factors applicable, (1), prior criminal history, and (7), gratify desire for pleasure. Like the trial court, we also give little weight to the non-statutory

---

[3]The appellant was sentenced as a multiple rapist pursuant to Tenn. Code Ann. § 39-13-523 (1999 Supp.) (multiple rapist or child rapist required to serve entire sentence imposed by the court undiminished by any sentence reduction credits). The imposition of one hundred percent service undiminished by sentence credits is not discretionary upon the court; the classification is statutorily required. Accordingly, the trial court did not err by setting service of the sentences for rape at one hundred percent. See also Tenn. Code Ann. § 40-35-501 (i) (1999 Supp.) (defendant shall serve one hundred percent of the sentence for rape and aggravated rape imposed by the court less sentence credits earned and retained).

mitigating factor. The presumptive sentence is eight years. Applying the enhancement factors and mitigating factor, we conclude that a sentence of ten years is appropriate.

**Count 6, 7, & 32 : Aggravated Burglary of Virginia Slayden, Janice Walden and Jennifer Stidham.**
Aggravated burglary, a class C felony, provides for a range I offender, a sentence "not less than three (3) nor more than six (6) years." See Tenn. Code Ann. § 39-14-403(b); Tenn. Code Ann. § 40-35-112(a)(3). The trial court imposed five year sentences for each conviction. Upon *de novo review,* we apply two enhancement factors (1), prior criminal history, and (7) gratify desire for pleasure, and one non-statutory mitigating factor. Considering these factors, we agree that a sentence of five years is appropriate for these offenses.

**Count 31: Rape of Jennifer Stidham.** The applicable sentencing range for a range I offender of rape, a class B felony, is "not less than eight (8) nor more than ten (10) years." Tenn. Code Ann. § 39-13-503(b); Tenn. Code Ann. § 40-35-112(a)(2). One enhancement factor, prior criminal history, and one non-statutory mitigating circumstance are applicable. Upon *de novo* review, we conclude that the trial court's imposition of a ten year sentence is appropriate.

<h3 style="text-align:center">Consecutive Sentences</h3>

In sentencing the appellant in the present case, the trial court found that the appellant qualified as a "dangerous offender," thus warranting partial consecutive sentences. Accordingly, the trial court ordered the sentences to be served as follows:

> Counts 1 and 2 will run concurrent with each other. Counts 3 and 5 will run concurrent with each other, but consecutive with the sentences imposed in counts 1 and 2. Counts 6 and 7 will run concurrent with each other, but consecutive to the sentence imposed in counts 3 and 5. And counts 31 and 32 will run concurrent with each other, but consecutive to the sentences imposed in counts 6 and 7. I believe that's a total sentence of fifty-nine years.

Before consecutive sentences can be imposed, the trial court must (1) first determine that one or more of the statutorily enumerated criteria of Tenn. Code Ann. § 40-35-115 exists, see also Gray v. State, 538 S.W.2d 391, 393 (Tenn.1976); and (2) if the defendant is found to be a dangerous offender, find that the aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity of the offender. State v. Wilkerson, 905 S.W.2d 933, 937 (Tenn.1995). See also State v. Lane, 3 S.W.3d 456 (Tenn.1999) (holding Wilkerson factors limited to sentencing of "dangerous offenders"). Notwithstanding proof of these criterions, a sentencing court retains the discretion of imposing consecutive sentences. On appeal, the exercise of the trial court's discretion is afforded great weight, provided the court correctly applied the principles of consecutive sentencing. Moreover, in determining whether the trial court providently exercised its discretion, "the overriding concern" is the fairness of the resulting sentence under all the circumstances.

Consecutive sentences are imposed upon dangerous offenders to protect society against offenders who commit aggravated crimes that pose a high risk to human life. Under Gray, a finding that a defendant is a "dangerous offender" is to be based solely upon the circumstances surrounding the crimes for which the defendant is being sentenced. The court stated in Gray: "[a] defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." 538 S.W.2d at 393 (emphasis added); see also Tenn. Code Ann. § 40-35-115(b)(4). No prerequisite exists in Tenn. Code Ann. § 40-35-115(b)(4), Gray v. State, or State v. Wilkerson that the offense, by statutory definition alone, be a dangerous offense. In determining the inherently dangerous nature of the instant offenses, the focus is not whether the crimes were dangerous crimes, but whether there exists aggravating circumstances in the commission of the instant offenses. See Gray, 538 S.W.2d at 393.

In the present case, the trial court found:

> There's no doubt that this defendant is a dangerous offender. He terrorized these four women. And if under the facts and circumstances of this case, he's not a dangerous offender, no one is.
> I place my primary weight on finding him to be a dangerous offender. I do think he's a person, given these multiple convictions, who's been engaged in extensive criminal activity. Whether the word "record" used in the statute means that has to be prior convictions . . .

We agree with this finding. Of particular import, we note that the rape of Ms. Bossart involved a vicious physical assault upon her person with long-lasting scars to her emotional health. She characterized her ordeal as a "sentence of life imprisonment." The physical beating was accompanied by the threat of death if the victim made any further attempt to defend herself. Threats were also made to Ms. Stidham. Accordingly, we conclude upon *de novo* review that the appellant's conduct in this case established aggravating circumstances necessary for classification as a dangerous offender.

Moreover, before consecutive sentencing may be imposed, the proof must establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn.1995). The psychosexual evaluation revealed that the appellant defended his sexual deviancy by denial and dishonesty. The evaluation also indicated that without treatment the appellant is at a high risk to reoffend. Accordingly, the imposition of partial consecutive sentences in this case is warranted.

## Conclusion

After our *de novo* review of the record, we affirm the length of the individual sentences imposed by the trial court. Moreover, finding the record supports the imposition of consecutive sentences, we affirm the appellant's aggregate sentence of 59 years.

_____
DAVID G. HAYES, JUDGE